## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| YASSER F. DAOUD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 10-987-SLR |
| | ) |
| CITY OF WILMINGTON, | ) |
| | ) |
| Defendant. | ) |

Regina E. Gray, Esquire, and Willan F. Joseph, Esquire of Wilmington, Delaware. Counsel for Plaintiff.

David H. Williams, Esquire, James H. McMackin, III, Esquire, and Allyson Britton DiRocco, Esquire of Morris James LLP, Wilmington, Delaware.  Counsel for Defendant.

## MEMORANDUM OPINION

Dated: October l  , 2012
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

Plaintiff Yasser F. Daoud ("Daoud") is suing the City of Wilmington ("the City") for alleged discriminatory and retaliatory actions based on Daoud's race, national origin, ancestry, ethnic characteristics, disability, and religion in violation of federal and state laws.[1] (D.I. 11 at ¶ 1) In April 2007, the City denied Daoud a promotion that he applied for, instead hiring an allegedly less qualified candidate. (*Id.* at ¶¶ 6-8) On March 28, 2008, Daoud filed charge of discrimination number 530-2008-01967 ("the '967 charge") with the Equal Employment Opportunity Commission ("EEOC"), averring that the City had discriminated and retaliated against him in violation of the Americans with Disabilities Act of 1990 ("ADA") and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. (D.I. 8 at A-1; D.I. 11 at ¶ 22) In response to that charge, the EEOC issued a right-to-sue letter dated August 19, 2010. (D.I. 9 at A-3) Daoud then filed the instant action against the City pro se on November 18, 2010. (D.I. 1) His complaint brought claims of discrimination and retaliation related to his non-promotion under Title VII, the ADA, 42 U.S.C. § 1981, and the Delaware Discrimination in Employment Act ("DDEA"), 19 Del. C. § 711. (D.I. 1)

On April 11, 2011, there having been no service of process docketed, the court *sua sponte* issued an order for plaintiff to show cause. (D.I. 3) On May 12, 2011, the court granted Daoud an additional sixty days, or until July 11, 2011, to effectuate

---

[1] The caption for this case originally listed Mayor James M. Baker as a defendant as well, but the original and amended complaints make no reference to the mayor as a party. (D.I. 1; D.I. 11) Moreover, the City's opening brief in support of its motion to dismiss notes that the parties agree that the mayor is not a defendant. (D.I. 14 at n.1) The court has excised the mayor as a party to the case.

service. (D.I. 5) Daoud filed an affidavit of process on July 6, 2011, indicating
attempted service on the City by personal delivery to Leonette Traylor ("Traylor"), a
Constituent Services Representative at the City's Office of Constituent Services. (D.I.
6)

In 2011, during the pendency of this suit, the City terminated Daoud's
employment. (D.I. 11 at ¶ 24) Daoud filed another charge of discrimination, charge
number 530-2011-01342 ("the '342 charge"), with the EEOC alleging that his
termination constituted unlawful discrimination and retaliation under Title VII and the
ADA. (D.I. 9 at A-6) He obtained counsel and filed an amended complaint that included
claims related to his termination. (D.I. 11 at ¶¶ 24-26) The amended complaint also
added causes of action under 42 U.S.C. § 1983 and the Fifth and Fourteenth
Amendments. (Id. at ¶¶ 1, 28)

Currently before the court is the City's motion to dismiss the amended complaint
for insufficient service of process and failure to state a claim.[2] (D.I. 13) The court has
jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1332.

## II. BACKGROUND

Plaintiff Daoud is an adult Egyptian-born, Muslim individual residing in
Wilmington, Delaware. (D.I. 11 at ¶ 3) He is also partially disabled due to a work-
related injury. (Id. at ¶ 23) Daoud alleges that the City failed to promote him in 2007
because of his race, national origin, ancestry, ethnic characteristics, disability, and
religion and that it retaliated against him for complaining about his non-promotion. (Id.

---

[2] Prior to the motion currently pending, the City filed a motion to dismiss the
original complaint on July 26, 2011. (D.I. 7) That motion was rendered moot by
plaintiff's amended complaint filed on September 21, 2011. (D.I. 11)

at ¶¶ 3, 21, 29-30) In addition, he alleges that the City retaliated and discriminated against him when it terminated his employment in 2011. (*Id.* at ¶¶ 26, 29-30)

Daoud began working for the City on October 8, 2000 as a Sanitation Driver. (*Id.* at ¶ 3; D.I. 19 at Addendum 1) In February 2007, he sought a promotion to the position of Assistant Sanitation Supervisor. (D.I. 11 at ¶ 6) Despite possessing allegedly superior qualifications, including experience in sanitation work and possession of a commercial driver's license ("CDL"), Daoud was not promoted. (*Id.* at ¶¶ 6-8) Instead, in April 2007, the City hired Jason Leary ("Leary"), a white male, for the position. (*Id.* at ¶ 8) Leary allegedly had no experience in sanitation work and did not possess a CDL. (*Id.*) In October 2007, Daoud learned that Leary was still the Assistant Sanitation Supervisor despite not having obtained a CDL. (*Id.* at ¶¶ 9, 11, 12, 16) Leary allegedly did not obtain his CDL license until February 2008. (*Id.* at ¶ 17) Daoud asserts that, in October or November 2007, he complained to the City's Personnel Administrator, William Jones ("Jones") who, upon investigation, determined that Leary was unqualified for the Assistant Sanitation Supervisor position and suspended him for five days over a five-week period. (*Id.* at ¶ 19; D.I. 9 at A-2) Daoud asserts that he should have been reconsidered for the promotion at that time. (D.I. 11 at ¶ 14) Thereafter, Sam Pratcher, the City's Deputy Director of Personnel, allegedly learned of Daoud's complaints through Jones. (*Id.* at ¶ 20) Daoud asserts that the City retaliated against him by denying him opportunities given to others, including overtime work, and, eventually, firing him. (*Id.* at ¶¶ 21, 26)

Based on the City's failure to promote him, Daoud complained to the local state

3

agency and filed the '967 charge with the EEOC on March 28, 2008. (D.I. 9 at A-1; D.I. 11 at ¶ 22) In the charge, he alleged retaliation and discrimination based on race, religion, national origin, and disability under Title VII and the ADA. (D.I. 9 at A-1, A-2) On the charge form, he alleged that the discriminatory action was a continued action that occurred from February 6, 2007 through March 28, 2008. (*Id.* at A-1)

On August 19, 2010, the EEOC declined to act on Daoud's charge and issued a right-to-sue letter. (D.I. 9 at A-3) Daoud initiated this lawsuit on November 18, 2010. (D.I. 1) In February 2011, the City fired Daoud. (D.I. 11 at ¶ 24) Daoud contends that the City permitted him to continue working, even though it supposedly found that his medical restrictions prevented him from being able to perform his job without posing a hazard to himself or others. (*Id.* at ¶¶ 24, 26; D.I. 9 at A-4). Thereafter, Daoud filed a second charge, the '342 charge, with the EEOC, alleging that the City unlawfully discriminated and retaliated against him when it fired him. (*Id.* at ¶ 26) The allegations in the '342 charge, like the first, were brought under Title VII and the ADA.[3] (D.I. 9 at A-5)

On February 28, 2012, the EEOC issued a determination letter in response to the '342 charge, finding that the record of evidence surrounding Daoud's firing supported his allegations of discrimination and retaliation. (D.I. 19 at Attachment 1) The EEOC indicated in the letter, however, that there was insufficient evidence to demonstrate that

---

[3] Although Daoud only alleged disability and retaliation as circumstances of the alleged discrimination in the '342 charge, the EEOC also checked the box corresponding to national origin on its notice of charge of discrimination. (D.I. 9 at A-4)

Daoud was subject to discrimination due to his religion or national origin.[4]  Because of its findings in Daoud's favor, the EEOC did not issue a right-to-sue letter for the '342 charge at that time and encouraged conciliation and settlement between the parties at the administrative stage.[5]  (Id.)

## III. STANDARD OF REVIEW

### A. Fed. R. Civ. P. 12(b)(5)

A defendant may file a motion to dismiss pursuant to Rule 12(b)(5) when a plaintiff fails to properly serve him or her with the summons and complaint.  Rule 4(m) states that, "[i]f service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action."  Fed. R. Civ. P. 4(m).  The rule goes on the state that, "[u]pon a showing of good cause for the failure to serve, the court must extend the time for service; [and] the court can, at it discretion, extend the time for service even if plaintiff has not shown good cause for the delay."  *Daniels v. Correctional Med. Services, Inc.*, 380 F. Supp. 2d 379, 384 (D. Del. 2005) (citing Fed. R. Civ. P. 4(m)); *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1098 (3d Cir.1995).

---

[4] The EEOC did not consider Daoud's allegations of discrimination based on race because it noted that it considers Egyptian to be a national origin and not a race.  (D.I. 19 at Addendum 1)

[5] The determination letter references another charge of discrimination that Daoud filed with the EEOC, charge number 530-2008-04161.  (D.I. 19 at Addendum 1) Apparently, that charge alleged discrimination for the City's failure to promote him to another position, Labor Foreman II.  (Id.)  However, because Daoud does not reference it in his complaint or briefs, the court will not consider it.

## B. Fed. R. Civ. P. 12(b)(6)

In reviewing a motion to dismiss for failure to state a claim filed under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (interpreting Fed.R.Civ.P. 8(a)) (internal quotations omitted). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 545 (alteration in original) (citation omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id*. Furthermore, "[w]hen there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Such a determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.*

6

## IV. DISCUSSION

Daoud asserts that the City unlawfully discriminated against him when it failed to promote him and subsequently terminated his employment. He also asserts that it unlawfully retaliated against him by, among other adverse actions, denying him overtime work and terminating him. Specifically, Daoud alleges that these employment actions violated Title VII, the ADA, 42 U.S.C. § 1983, 42 U.S.C. § 1981, and the DDEA.[6] The City moves to dismiss plaintiff's amended complaint on 12(b)(5) grounds and several 12(b)(6) grounds.[7] The court will address each argument separately.

### A. Rule 12(b)(5) Grounds for Dismissal

In lieu of an answer, the City moves for dismissal under Rule 12(b)(5) on grounds that service of process was insufficient because the individual Daoud served, Traylor, was neither an agent for the City nor authorized to accept service on behalf of the City. (D.I. 8 at 5)  Rule 4(j)(2) provides that service upon a state or local government must be effected by "(A) delivering a copy of the summons and of the complaint to its chief

---

[6] The counts in plaintiff's amended complaint are not a model of clarity. They do not incorporate by reference all of the preceding paragraphs containing the supporting factual allegations. (See D.I. 11 at ¶¶ 27, 29, 31)  It is also unclear whether plaintiff is asserting Title VII, ADA, § 1981, § 1983, Fifth Amendment, Fourteenth Amendment, and DDEA claims based only on the City's failure to hire or promote him and not his subsequent employment termination. (See id. at ¶¶ 27-28)  The court does not read the complaint in a vacuum and may consider the pleadings, the public record, and other documents incorporated by reference in the complaint. See Tellabs, 551 U.S. at 322; Oshiver, 38 F.3d at 1384-85 n.2.  As such, the court assumes that plaintiff incorporates by reference all relevant factual allegations in its three counts and is alleging Title VII, ADA, § 1981, § 1983, Fifth Amendment, Fourteenth Amendment, and DDEA claims based on all of the alleged unlawful employment practices.

[7] Defendant's opening brief in support of its motion to dismiss the amended complaint (D.I. 14) incorporates by reference its opening brief in support of its motion to dismiss the original complaint (D.I. 8). (See D.I. 14 at 1)

executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2). The Delaware rule for service on a governmental organization is similar. *Shipley v. Orndoff*, 491 F. Supp. 2d 498, 502–03 (D. Del. 2007). It provides that service shall be made "by delivering a copy of the summons, complaint and affidavit, if any, to the chief executive officer thereof or by serving copies thereof in the manner prescribed by law for the service of summons upon such defendant." Del. Super. Ct. R. Civ. P. 4(f)(1)(IV).

In *Shipley*, the court found that a plaintiff's attempt to serve a county's lawyer was insufficient for service on the county. 491 F. Supp. 2d at 503. Here, plaintiff was required to serve the mayor or an authorized agent for the City. Defendant asserts that Traylor is not an agent of the City or authorized to accept service on behalf of the City. (D.I. 8 at 5) Her office, though in the same City/County Building, is six floors below the mayor's office. (*Id.*) Because plaintiff makes no assertion and there is no evidence that Traylor was authorized to receive service on behalf of the City, Daoud's attempted service through Traylor was insufficient. Although service on Traynor likely led to the City's knowledge of the suit, notice of a claim generally is not sufficient to establish personal jurisdiction. *Ayres*, 99 F.3d at 569; *Belden Techs., Inc., v. LS Corp.*, 626 F. Supp. 2d 448, 461 (D. Del. 2009).

It is of no avail that plaintiff may have attempted service prior to obtaining counsel.[8] Daoud filed the instant suit pro se, and it is unclear whether he had obtained

---

[8] Plaintiff attempted to serve the City on July 6, 2011. (D.I. 6) His amended complaint was filed with the assistance of counsel on September 21, 2011. (D.I. 11) The first time plaintiff's counsel appears on the docket is in association with the amended complaint.

counsel at the time of attempted service of process. While courts liberally construe the pleadings and the complaints of pro se plaintiffs, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted), even pro se plaintiffs must adhere to the rules of procedure and the substantive law, *see McNeil v. United States*, 508 U.S. 106 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse the mistakes of those who proceed without counsel"); *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975) (stating that pro se status is not a license to disregard procedural rules or substantive law). The Third Circuit has consistently abided by the Supreme Court's guidance on this matter, dismissing pro se complaints when the plaintiff has failed to abide by the Federal Rules. *See Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 567, 570 (3d Cir. 1996); *Thompson v. Target Stores*, 501 F. Supp. 2d 601, 604 (D. Del. 2007). Daoud was given more than seven months to properly serve defendant. Therefore, plaintiff's prior pro se status does not excuse his failure to obtain a proper summons or effectuate service in accordance with the Federal Rules.

"Upon determining that process has not been properly served on a defendant, district courts possess broad discretion to either dismiss the plaintiff's complaint for failure to effect service or to simply quash service of process." *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992). Dismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained. *Id.* (citing *Richardson v. Ingram Corp.*, 374 F.2d 502, 503 (3d Cir. 1967)). Therefore, although the court concludes that service of process was insufficient, it may afford plaintiff another

9

opportunity to attempt service in the event any of plaintiff's claims survive the motion to dismiss. As such, the court will address the 12(b)(6) grounds for dismissal raised by the City. Because the court dismisses plaintiff's federal law claims for reasons discussed below, it will order plaintiff to show cause as to why the court should not decline supplemental jurisdiction over his state law claims.

## B. Rule 12(b)(6) Grounds for Dismissal

### 1. The ADA and Title VII of the Civil Rights Act of 1994

The anti-discrimination and anti-retaliation provisions of Title VII protect employees from unlawful employment practices.[9] Title VII contains administrative remedies and procedures that a litigant must exhaust prior to asserting a private cause

---

[9] The anti-discrimination provision of Title VII provides:

> It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a). The anti-retaliation provision of Title VII provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he had made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. 2000e-3(a).

10

of action under the Act. *See* 42 U.S.C. § 2000e-5; *Burgh v. Borough Council of the Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001). The same administrative requirements are prerequisites to asserting a private cause of action under the ADA. *See Smiley, v. Daimler Chrysler*, 538 F. Supp. 2d 711, 719 (D. Del. 2008); *Fox v. MBNA Am. Bank, N.A.*, 2006 WL 2711835, at *2 (D. Del. Sept. 20, 2006). Daoud asserts that he has exhausted all of his administrative remedies and met the time limitations for the Title VII and ADA claims.[10] (D.I. 11 at ¶¶ 4, 22) The City contests those assertions. (D.I. 8 at 6-9)

In the context of an aggrieved individual charging unlawful employment practices by an employer, the administrative procedures require the filing of a formal charge of discrimination with the EEOC within the required time. *Fox,* 2006 WL 2711835, at *2; *Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103, 115 n.14 (3d Cir. 2003)). In Delaware, a claimant filing a charge of discrimination under Title VII has 300 days from the time of the alleged discriminatory act to file a complaint with the EEOC.[11] *Riley v. Delaware River & Bay Auth.*, 457 F. Supp. 2d 505, 510 (D. Del. 2006). If the agency does not

_____

[10] Defendant asserts failure to exhaust administrative remedies only with respect to the ADA claims but, because the '967 charge and the '342 dharge assert both Title VII and ADA grounds, the court will consider both Title VII and ADA claims in this regard.

[11] Title VII provides that a charge of discrimination must be filed with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred . . . except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency," the limitation is extended to "three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). Delaware has procedures that provide claimants the benefit of a 300-day limitation period. *See Arasteh v. MBNA Am. Bank, N.A.*, 146 F. Supp. 2d 476, 490 (D. Del. 2001).

11

take action within a specified time period, it must notify the aggrieved individual, typically with a right-to-sue letter, after which the individual has 90 days to file a civil action. *See* 42 U.S.C. § 2000e-5(f)(1); *Burgh*, 251 F.3d at 470. Both the 300-day limitation to file the charge of discrimination and the 90-day period for filing the court action are treated as statutes of limitations. *Id.* at 470 (citing *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393 (1982)).

The policy underlying this framework is to provide the EEOC the opportunity to investigate discrimination claims and resolve them administratively through cooperation in a noncoercive manner. *See Burgh*, 251 F.3d at 470; *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976). "The ambit of a civil complaint, once a right-to-sue letter is issued by the EEOC, is defined by the scope of the EEOC investigation which can reasonably be expected to grow out of a charge of discrimination, regardless of the actual scope of the EEOC investigation." *Smiley*, 538 F. Supp. 2d at 719 (internal quotation marks omitted); *see also Barznty v. Verizon PA, Inc.*, 361 F. App'x 411, 414 (3d Cir. 2010). The test for determining whether a plaintiff has exhausted his administrative remedies regarding specific claims is "whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *See Smiley*, 538 F. Supp. 2d at 719-20.

Daoud filed two separate charges with the EEOC, each alleging violations of Title VII and the ADA: (1) the '967 charge was filed on March 28, 2008, based on his non-promotion to Assistant Sanitation Supervisor; and (2) the '342 charge was filed on

12

March 1, 2011, based on the termination of his employment.[12]  (D.I. 9 at A-1, A-4)  The

right-to-sue letter for the '967 charge was dated August 19, 2010, so the EEOC at the

time could not have investigated the claims related to Daoud's termination, which did

not occur until around February 2011.  Because the two charges are based on separate

employer actions and the scope of the EEOC's investigation into the '967 charge did not

encompass the alleged acts in the '342 charge, the Title VII and ADA claims that each

charge alleged must be examined separately for timeliness and exhaustion of

administrative remedies.

### a.  The '967 charge

Regarding the '967 charge, Daoud has exhausted his administrative remedies

because the EEOC, in lieu of initiating any action on Daoud's behalf, issued a right-to-

sue letter on August 19, 2010.  (D.I. 9 at A-3)  The letter permitted Daoud to initiate a

private civil action, and he did so on November 18, 2010.  However, the allegedly

discriminatory actions alleged in the charge must also fall within the 300-day limitation

that Daoud had to file the charge.

Daoud filed the '967 charge on March 28, 2008.  On the charge of discrimination

form, he characterized the alleged discrimination as a continuing action that occurred

from February 6, 2007 through March 28, 2008.  A portion of that time period falls

outside of the 300-day limitation.  The City asserts that the 300-day limitation for filing the

---

[12] The court can properly consider the charges of discrimination filed by Daoud with the EEOC.  The charges are matters of public record that are integral to plaintiff's complaint, and plaintiff cannot sustain his private causes of action without showing resort to administrative relief.  *See Reed v. Hewlett-Packard Co.*, 2001 WL 65725, at *2 (D. Del. Jan. 12, 2001).

'967 charge started accruing in February 2007, when Daoud unsuccessfully applied for the position of Assistant Sanitation Supervisor, and thereby bars the entire '967 charge as untimely.[13]  (D.I. 9 at A-1)

The Supreme Court was presented with similar facts in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002), and had to decide what constitutes an "unlawful employment practice" for purposes of calculating the 300-day limitation period.  In that case, a black male filed a charge with the EEOC, alleging that he was consistently harassed and disciplined more harshly than other employees because of his race.  Some of the allegedly discriminatory acts occurred within 300 days of the time that he filed his charge, but others took place prior to that time period.  The Court strictly construed the statutory language to hold that, with the exception of hostile environment claims, the term "unlawful employment practice" refers to a discrete unlawful act and cannot refer to related incidents characterized together as a single "practice." *Id.* at 111.  In other words, each incident of discrimination and each retaliatory employment action constitutes a separate actionable "unlawful employment practice." Moreover, the Court reiterated that "discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." *Id.* at 112 (citing *United Air Lines, Inc. v. Evans*, 431 U.S. 553 (1977)).  "Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Id.* at 113 (internal quotation marks omitted).

Accordingly, pursuant to *National Railroad Passenger Corp.*, Daoud cannot allege

---

[13] Plaintiff does not respond to these contentions in his answering brief, but the court will construe the facts at this stage of litigation in the light most favorable to plaintiff.

14

that the City's failure to promote him constituted one continuous discriminatory action from February 6, 2007 through March 28, 2008. It cannot be that the City's maintenance of the status quo after hiring Leary over Daoud caused each new day to start a new clock for filing charges. On the other hand, the City errs in relying entirely on February 2007 as the accrual date for the 300-day limitation. The alleged failure to hire or promote Daoud did not occur until sometime in April 2007. Moreover, Daoud alleged several discriminatory actions in the '967 charge, and each action must be examined in relation to the 300-day limitation because it is distinct.

Three hundred days prior to March 28, 2008 was June 2, 2007; any allegedly unlawful employment practices prior to June 2, 2007 are time-barred by the EEOC filing limitation. Daoud has alleged that he was passed over for promotion in April 2007. (D.I. 9 at A-1; D.I. 11 at ¶ 8) Regardless of which specific day in April 2007 the event occurred, the Title VII and ADA claims arising from the failure to promote are time-barred. That leaves Daoud's contentions that he complained to Jones about Leary's lack of qualifications and that the City should have reconsidered him for the promotion.[14] (D.I. 9 at A-2; D.I. 11 at ¶ 18) However, Daoud's complaining alone cannot constitute a discriminatory action by the employer and neither can the City's failure to act to reconsider him for promotion. The City merely maintained the status quo when it decided not to terminate Leary; Daoud has not alleged any facts indicating he was entitled to reconsideration at that time.

---

[14] Daoud complained to Jones in October or November of 2007. (D.I. 9 at A-2) He asserts that the City should have reconsidered him for the promotion around February 2008. (Id.)

15

Daoud also alleges that unlawful retaliatory action occurred after he complained to Jones about the City's alleged unlawful practices.[15] He avers that the City "consistently denied [him] overtime that [was] given to non-Egyptian Muslim employees," but has not pled any facts to demonstrate that his claims are not time-barred. (D.I. 9 at A-2) He does not provide any of the dates when he was denied overtime, and the court is unable to infer if or when the retaliation might have occurred. Daoud has had three opportunities to adequately assert his allegations and demonstrate compliance with the timeliness requirements: first in the '967 charge filed with the EEOC, then in his original complaint filed with the court, and finally in his amended complaint. He has had ample opportunity to draft his factual allegations adequately. Thus, the court will not grant leave for plaintiff to amend his complaint a second time.

The court dismisses the Title VII and ADA claims based on Daoud's non-promotion and related complaints to his employer as being time-barred.

### b. The '342 charge

As opposed to the '967 charge, the '342 charge alleges facts based on Daoud's termination. "[T]he issuance of a right-to-sue letter is a statutory requirement that . . . may be satisfied by issuance of the letter after the complaint has been filed." Tlush, 315 F. Supp. 2d at 655 (citing Gooding v. Warner-Lambert Co., 744 F.2d 354, 358 (3d Cir. 1984)). However, there is no indication, and plaintiff does not assert, that the EEOC has issued a right-to-sue letter for the '342 charge since the complaint was filed in the instant action. The EEOC has thus far issued a determination letter, dated February 28, 2012,

---

[15] Plaintiff's retaliation claims arising from his employment termination are encompassed under the scope of the '342 charge and are discussed infra.

16

in which it states that "[t]he evidence supports [Daoud]'s allegations that [the City] discriminated against him because of his diability and retaliated against him because he filed a previous charge of discrimination." (D.I. 19 at Addendum 1) This determination was a not a right-to-sue letter. In fact, Daoud's counsel responded by letter to the EEOC on March 14, 2012, requesting the termination of the administrative proceeding and the issuance of a right-to-sue letter. (*Id.* at Addendum 2) There has been no assertion in this case that the EEOC has subsequently issued a right-to-sue letter.[16]

As Daoud has not pled facts leading to an inference that he has exhausted his administrative remedies for the '342 charge, the court does not need to discuss whether the Title VII and ADA claims related to the charge are time-barred. Until the administrative remedies for the '342 charge are exhausted, any violations of Title VII or the ADA alleged in the charge cannot be brought as a private cause of action. Plaintiff cannot simultaneously seek relief in district court while the EEOC's administrative procedure is pending. The court dismisses plaintiff's Title VII and ADA claims related to his job termination.

### 2. 42 U.S.C. § 1981

Section 1981 of the Civil Rights Act of 1991 protects equal rights in making and enforcing contracts, which includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and

---

[16] Daoud recently filed a second discrimination suit against the City on July 12, 2012. Civ. No. 12-873. The complaint in that case alludes to a right-to-sue letter issued on April 16, 2012. (Civ. No. 12-873, D.I. 1 at ¶ 6) However, the court has no way of knowing whether that right-to-sue letter was issued for the '342 charge. It is plaintiff's responsibility to inform the court in the instant action if it obtained a relevant right-to-sue letter.

conditions of the contractual relationship." 42 U.S.C. § 1981(b). The City asserts that

plaintiff's § 1981 claim is barred because it does not apply to state actors. It is well-

established that "§ 1981, while providing extensive **rights**, does not itself provide a

**remedy** against state actors." *McGovern v. City of Philadelphia*, 554 F.3d 114, 116 (3d

Cir. 2009) (emphasis added) (citing *Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701, 731

(1989)). Rather, 42 U.S.C. § 1983 provides the exclusive remedy to enforce the rights

guaranteed in § 1981. Thus, the court grants dismissal of plaintiff's § 1981 claims.

### 3. 42 U.S.C. § 1983

Plaintiff's §1983 claims against the City are substantively grounded in the

Fourteenth Amendment.[17] Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983. The City seeks to dismiss plaintiff's § 1983 claims as barred by the

statute of limitations. Furthermore, the City avers that plaintiff's claims under § 1983

must fail as a matter of law because plaintiff failed to plead sufficient facts to show that

his injuries were the result of an official municipal policy or custom. The court finds both

of defendant's arguments well-reasoned.

---

[17] Congress enacted § 1983 to enforce the substantive provisions of the
Fourteenth Amendment, pursuant to Section 5 of the Amendment. *New Castle Cty.
Vocational Tech. Educ. Ass'n v. Bd. of Educ.*, 569 F. Supp. 1482, 1484 (D. Del. 1983).
Plaintiff also asserts violation of his Fifth Amendment due process rights. However, the
Fifth Amendment's due process guarantee is inapplicable against the City because it
applies only against federal actors. *See, e.g., Freebery v. Coons*, 589 F. Supp. 2d 409,
415 (D. Del. 2008).

18

Section 1983 does not itself provide a statute of limitations; rather, the applicable statute of limitations is the state's statute of limitations governing personal injury claims. *See Wilson v. Garcia*, 471 U.S. 261, 276-78 (1985); *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998). In Delaware, the statute of limitations for a personal injury cause of action is two years. 10 Del. C. § 8119.

Daoud initiated the current action on November 18, 2010; any § 1983 claims arising out of alleged discriminatory or retaliatory actions before November 19, 2008 would be time-barred. The City's alleged failure to promote Daoud and the retaliation alleged in the '967 charge occurred prior to November 19, 2008 and, therefore, are time-barred. To the extent that plaintiff asserts a § 1983 claim arising out of his employment termination in February 2011, that claim would not be time-barred.

However, for a § 1983 claim to pass muster under Fed. R. Civ. P. 8, the complaint must contain enough factual matter that, if taken as true, provides entitlement to relief. It is well-established that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *see also Kiser v. Kramer*, 2010 WL 4513421, at *2 n.2 (D. Del. Nov. 2, 2010). One can sue a local governing body directly for relief under § 1983 only if "the action alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is a "constitutional deprivation visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 690-91.

19

Plaintiff at bar has not pled any facts suggesting that the City discriminated or retaliated against him pursuant to an official policy, ordinance, regulation, or adopted decision. Nor has plaintiff asserted any facts to indicate that the alleged discriminatory and retaliatory actions were pursuant to the City's custom, official or unofficial. Therefore, the court dismisses plaintiff's § 1983 claims.

### 4. Delaware's anti-discrimination statute

Finally, the City asserts that a plaintiff is barred from seeking remedies under Delaware's anti-discrimination statute, the DDEA, while simultaneously seeking remedies under Title VII. Insofar as none of plaintiff's Title VII claims survive the motion to dismiss, defendant's argument is moot. However, the dismissal of all of plaintiff's federal claims leaves only matters of state law in the case. Therefore, the court orders plaintiff to show cause as to why it should not decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3).

## V. CONCLUSION

For the aforementioned reasons, the court grants in part and denies in part defendant's motion to dismiss. The court orders plaintiff to show cause as to why it should not decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). An appropriate order shall ensue.