IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| YASSER F. DAOUD,<br><br>   Plaintiff,<br><br> v.<br><br>CITY OF WILMINGTON,<br><br>   Defendant. | )<br>)<br>)<br>)<br>) Civ. No. 10-987-SLR<br>)<br>)<br>)<br>) |

Regina E. Gray, Esquire of New Castle, Delaware. Counsel for Plaintiff. Of Counsel: Willan F. Joseph, Esquire.

David H. Williams, Esquire, James H. McMackin, III, Esquire, and Allyson Britton DiRocco, Esquire of Morris James LLP, Wilmington, Delaware. Counsel for Defendant.

**MEMORANDUM OPINION**

Dated: May 23, 2013
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Yasser F. Daoud ("Daoud") filed the instant suit against the City of Wilmington ("the City") on November 18, 2010, alleging discriminatory and retaliatory actions based on Daoud's race, national origin, ancestry, ethnic characteristics, disability, and religion in violation of federal and state laws. (D.I. 1; D.I. 11) In a memorandum opinion and order dated October 1, 2012 (the "motion to dismiss decision"), the court granted in part and denied in part the City's motion to dismiss. (D.I. 21; D.I. 22) All of Daoud's federal claims were dismissed, leaving only matters of state law in the case. As such, the court ordered Daoud to show cause as to why the court should not decline supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3). Presently before the court is Daoud's motion pursuant to Federal Rules of Civil Procedure 59 and 60 and response to the court's order to show cause. (D.I. 24) The court considers the motion as one for reconsideration because it asks the court to revisit, correct, and modify its motion to dismiss decision. For the reasons below, the court denies Daoud's motion and finds that he has not shown cause for the court to not decline supplemental jurisdiction.

## II. BACKGROUND

Daoud is an Egyptian-born, Muslim individual who is also partially disabled due to a work-related injury. (D.I. 11 at ¶¶ 3, 23) He began working for the City on October 8, 2000 as a Sanitation Driver and, in February 2007, sought a promotion to the position of Assistant Sanitation Supervisor. (Id. at ¶¶ 3, 6; D.I. 19 at Addendum 1) Despite possessing allegedly superior qualifications, including experience in sanitation

work and possession of a commercial driver's license ("CDL"), Daoud was not promoted. (D.I. 11 at ¶¶ 6-8) Instead, the City hired Jason Leary ("Leary"), a white male, for the position in April 2007. (Id. at ¶ 8) In October or November 2007, Daoud complained to the City's Personnel Administrator, William Jones ("Jones") who, upon investigation, determined that Leary was unqualified for the Assistant Sanitation Supervisor position for not possessing a CDL. (Id. at ¶ 19; D.I. 9 at A-2) Daoud alleges that the City should have terminated Jones at that time and reconsidered him for the position. (D.I. 11 at ¶ 14) Daoud also asserts that the City retaliated against him by denying him opportunities given to others, including overtime work. (Id. at ¶ 21)

On March 28, 2008, based on the City's failure to promote him and the alleged retaliation, Daoud complained to the local state agency and filed charge of discrimination number 530-2008-01967 ("the '967 charge") with the Equal Employment Opportunity Commission ("EEOC"), averring violations of the Americans with Disabilities Act of 1990 ("ADA") and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. (D.I. 9 at A-1; D.I. 11 at ¶ 12) Daoud alleged in the charge that the discriminatory action was a continued action that occurred from February 6, 2007 through March 28, 2008. (D.I. 8 at A-1) In response, the EEOC issued a right-to-sue letter dated August 19, 2010. (D.I. 9 at A-3) Daoud then initiated the instant action on November 18, 2010, alleging violations of Title VII, the ADA, 42 U.S.C. § 1981, and the Delaware Discrimination in Employment Act ("DDEA"), 19 Del. C. § 711. (D.I. 1)

In February 2011, during the pendency of this action, the City terminated Daoud's employment. (D.I. 11 at ¶ 24) Daoud then filed another charge of discrimination, charge number 530-2011-01342 ("the '342 charge"), with the EEOC,

2

alleging that his employment termination constituted unlawful discrimination and retaliation under Title VII and the ADA. (D.I. 9 at A-6) Thereafter, Daoud amended his complaint to add factual allegations related to his termination, as well as causes of action under 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments. (D.I. 11 at ¶¶ 1, 24-26, 28)

On October 1, 2012, the court dismissed Daoud's ADA and Title VII claims related to the '967 charge. Specifically, the court found that Daoud's ADA and Title VII claims were time-barred with respect to the alleged failure to promote; were not based on discriminatory actions insofar as they were premised on Daoud's complaint to the City and the City's failure to reconsider him for the promotion; and did not sufficiently state a claim for the alleged retaliation. (D.I. 21 at 13-16) With respect to Daoud's ADA and Title VII claims related to the '342 charge, the court found that Daoud had not sufficiently demonstrated that he had exhausted his administrative remedies. (*Id.* at 16-17) The court further granted dismissal of the § 1981, § 1983, Fifth Amendment, and Fourteenth Amendment claims. (*Id.* at 17-20 & n.17)

## III. STANDARD OF REVIEW

### A. Motion for Reconsideration

Motions for reconsideration are the "functional equivalent" of motions to alter or amend judgment under Federal Rule of Civil Procedure 59(e). *See Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1352 (3d Cir. 1990) (citing *Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 348 (3d Cir. 1986)). The standard for obtaining relief under Rule 59(e) is difficult to meet. The purpose of a motion for reconsideration is to "correct

3

manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). A court should exercise its discretion to alter or amend its judgment only if the movant demonstrates one of the following: (1) a change in the controlling law; (2) a need to correct a clear error of law or fact or to prevent manifest injustice; or (3) availability of new evidence not available when the judgment was granted. *See id.*

A motion for reconsideration is not properly grounded on a request that a court rethink a decision already made. *See Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa.1993). Motions for reargument or reconsideration may not be used "as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990). Reargument, however, may be appropriate where a court "has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the [c]ourt by the parties, or has made an error not of reasoning but of apprehension." *Id.* at 1241 (citations omitted); *see also* D. Del. LR 7.1.5.

### B. Supplemental Jurisdiction

District courts may exercise supplemental jurisdiction over all claims that are so related to claims in the action that they are part of the same case or controversy under Article III of the Constitution. *See* 28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims

4

over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). In deciding whether to decline jurisdiction, district courts may consider the values of judicial economy, convenience, fairness, and comity. *See City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 173 (1997) (citations omitted).

## IV. DISCUSSION

Daoud's current motion asks the court to reinstate several of his claims and to not decline supplemental jurisdiction, solely on the basis that those federal law claims should be reinstated. (D.I. 25 at 8) Specifically, Daoud requests that the court permit his ADA and Title VII claims of discrimination to go forward based on allegations of discriminatory retaliation beginning October 2007.[1] Because Daoud does not assert that there is a change in the controlling law or that there is new evidence that was not available before the motion was granted, he must demonstrate a need to correct a clear error of law or fact. *See Max's Seafood Cafe*, 176 F.3d at 677.

### A. Rule 12(b)(6) Grounds for Dismissal

Daoud first urges that the court's Rule 12(b)(6) grounds for dismissal should be corrected and modified because not all of the allegations in Daoud's '967 charge fail to state a legally cognizable claim. (D.I. 25 at 6-7) Daoud also asserts that the claims related to his termination were improperly dismissed because they are the subject of another suit before the court, Civ. No. 12-873 ("the 12-873 action"), in which he had inadvertently neglected to docket the corresponding right-to-sue letter. (*See id.* at 2 &

---

[1]Daoud's motion and response do not address the dismissal of his § 1981, § 1983, Fifth Amendment, or Fourteenth Amendment claims.

5

n.1, 7-8)

### 1. The '967 charge

The '967 charge, filed on March 28, 2008, contained allegations of discrimination related to the City's failure to promote Daoud and its retaliation against him, including the denial of overtime. As the court previously observed, any allegedly unlawful employment practices asserted in the '967 charge that occurred prior to June 2, 2007 are time-barred by the 300-day EEOC filing limitation.[2] (See D.I. 21 at 15) Daoud seeks reconsideration of his claims based on the City's actions that allegedly occurred between October 2007 and March 28, 2008. These include the City's decision to retain and discipline Leary in October of 2007 rather than reconsider Daoud for promotion, as well as the City's allegedly retaliatory treatment of Daoud. (D.I. 11 at ¶¶ 9, 10, 12-16, 18, 21)

With respect to the City's decision to retain and discipline Leary, Daoud now argues that the court did not look at the allegations in his complaint in the light most favorable to him. (D.I. 25 at 6-7) The court held that the City's failure to reconsider him for promotion could not be deemed a discriminatory act because the City was under no obligation to reconsider its promotion decision. (D.I. 21 at 15) Daoud's argument simply repeats arguments that he previously made and the court considered.[3] As a motion for reconsideration is not properly grounded on a request that a court rethink a

---

[2] Daoud does not contest the court's determination that any claims of discrimination occurring before June 2, 2007, including the City's hiring of Leary rather than Daoud, are time-barred. (D.I. 21 at 15)

[3] To the extent Daoud asserts that the court overlooked certain facts, the court found that the facts alleged (e.g., that the City maintained the status quo) cannot restart the clock for a failure to promote claim. (D.I. 21 at 13-15)

decision already made, the court will not address Daoud's argument for a second time.

The dismissal of Daoud's retaliation claim, however, warrants more discussion. Daoud argues that this claim is not time-barred because he was denied overtime after he had complained of discriminatory treatment in October or November 2007 (the "October/November 2007 complaints"). (See D.I. 11 at ¶¶ 16, 18, 21, 23; see also D.I. 9 at A-2) The court's motion to dismiss decision acknowledged Daoud's position, noting that "Daoud . . . alleges that unlawful retaliatory action occurred after he complained to Jones about the City's alleged unlawful practices." (D.I. 21 at 16) However, the court found that, in light of the '967 charge, Daoud had not drafted his allegations to adequately assert his allegations and demonstrate compliance with the timeliness requirements. (Id.) (citing D.I. 9 at A-2) The court's concern with the retaliation claim may not have been most clearly conveyed in its decision. Therefore, the court will now clarify its reasoning as follows:

"The parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." See Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398–99 (3d Cir. 1976), cert. denied, 429 U.S. 1041 (1977), called into doubt on other grounds by Dillon v. Coles, 746 F.2d 998 (3d Cir. 1984). The '967 charge mentions Daoud's October/November 2007 complaints in the context of alleging that the City was informed of Leary's noncompliance with job requirements and did not reconsider Daoud for his desired promotion. (D.I. 9 at A2) The '967 charge did not, however, attribute Daoud's denial of overtime to those October/November 2007 complaints. Rather,

7

Daoud averred in the charge:

> IV. [The City] also has consistently denied me overtime that is given to non-Egyptian Muslim employees. This is in spite of the fact that I have more seniority than most of the other employees, like "Big Leonard." I believe their denying me overtime is also in retaliation for me filing a workers' compensation claim for my back injury.
>
> V. I believe I have been and am being discriminated against, in that I was denied a promotion . . . and denied regular overtime, solely because I am an Egyptian Muslim . . . and for filing a workers' compensation claim . . . .

(*Id.*) Insofar as the denial of overtime was allegedly retaliatory, the only impetus for retaliation that Daoud mentioned in the '967 charge was his filing of a workers' compensation claim for an injury that occurred around 2004. (*See id.* at A5) Daoud also tied the denial of overtime to his status as an Egyptian Muslim, but that is an inherent status regardless of his complaining to the City or filing a workers' compensation claim. In other words, the '967 charge asserted a long-standing practice of the City denying Daoud overtime. The retaliation allegedly occurred "consistently" at least after Daoud's workers' compensation claim, so it cannot be said that Daoud's charge tried to draw any connection between the retaliation and his October/November 2007 complaints. As a result, the scope of an EEOC investigation arising out of the '967 charge could not have been reasonably expected to inquire into any causal relationship between the October/November 2007 complaints and Daoud's denial of overtime. The allegations in Daoud's amended complaint which plead that the retaliatory action occurred after he complained in October or November 2007 are incongruent with the '967 charge and, indeed, fall outside the scope of that charge. Therefore, Daoud did not adequately assert his retaliation allegations and demonstrate compliance with the timeliness requirements.

8

### 2. The '342 charge

Daoud also takes issue with the court's statement that his amended complaint "included claims related to his termination" from his employment around February 2011, which are set forth in the '342 charge. Daoud now claims that "the matter of [his] separation was included for factual clarity and to inform the court of the potential for further litigation between the parties. Nowhere was the matter of Daoud's termination intended to be included as a separate count in the Amended Complaint at issue here . . . ." (D.I. 25 at 1-2)

In its motion to dismiss decision, the court noted some ambiguity in Daoud's amended complaint and construed it to include claims related to his termination. (D.I. 21 at 7 n.6) At the time the court issued its motion to dismiss decision, Daoud had filed the 12-873 action related to his termination, but he had not yet filed an EEOC right-to-sue letter corresponding to his termination in either the instant case or the 12-873 action. (See id. at 16-17 & n.16) The court found that, "[u]ntil the administrative remedies for the '342 charge are exhausted, any violations of Title VII or the ADA alleged in the charge cannot be brought as a private cause of action." (Id. at 17)

Daoud has now clarified that, although the amended complaint in the instant case included factual allegations related to his termination, he did not intend to include any claims related to his termination. (D.I. 25 at 1-2, 7-8) He has since docketed the right-to-sue letter for the '342 charge in the 12-873 action,[4] so the court considers the

---

[4] Daoud opines that he "[i]nadvertently filed . . . an incorrect right to sue notice" in the 12-873 action. He filed an amended complaint in that case on February 19, 2013 to docket the correct right-to-sue letter corresponding to the '342 charge. (Civ. No. 12-873, D.I. 6-1)

9

instant motion to be moot with respect to the '342 charge. The allegations in the '342 charge are the subject of a separate action before the court.

### B. Rule 12(b)(5) Grounds for Dismissal

Daoud also argues that the court erred in finding a Rule 12(b)(5) deficiency because he "served the City, and identifie[d] a person that cannot on face value be held to be an improper person." (*Id.* at 5) This argument is a rehash of his previous arguments, which the court considered in its motion to dismiss decision. The court finds no occasion to reconsider its determination at this juncture. Daoud further contends that dismissal would be inappropriate without affording him an opportunity to remedy improper service of process. (*Id.*) The court's motion to dismiss decision left open the possibility that, if any claims were to survive, Daoud may be afforded an opportunity to render proper service. (D.I. 21 at 9-10) As no claims (including the state law claims discussed *infra*) survive, Daoud's concern is now moot.[5]

### C. Supplemental Jurisdiction

Finally, Daoud proffers no reason for the court to exercise supplemental jurisdiction over his state law claims except an argument, which the court has rejected, that his Title VII and ADA claims should be revived. He offers no exceptional circumstances that should compel the court to exercise supplemental jurisdiction, nor does he offer any reasons of judicial economy, convenience, fairness, or comity. Therefore, the court declines to exercise supplemental jurisdiction over Daoud's state law claims.

---

[5] Daoud's request that the court consolidate the 12-873 action with the instant case (*see* D.I. 25 at 9) is also moot.

## V. CONCLUSION

For the foregoing reasons, Daoud's motion is denied. The court declines to exercise supplemental jurisdiction over the remaining state law claims. An appropriate order shall issue.